## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDEEP NAYAK, | : | CIVIL NO. 1:15-CV-00933 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| McNEES WALLACE & | : | |
| NURICK LCC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Presently before the Court are Defendants' motions (*docs. 23*, *26*) to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because Plaintiff's claims are legally barred by the doctrine of *res judicata* and by a release agreement that Plaintiff signed, we recommend granting both motions.  And further, because Plaintiff's claims are incapable of being cured by amendment, we recommend that the complaint be dismissed with prejudice.

## II. Background.

### A. Procedural Background.

The present action is yet another iteration of the same nucleus of claims asserted by Nayak in other matters presently, and formerly, filed with this Court. By way of background, presently pending is case number 1:14-CV-01053, consolidated with case number 1:14-CV-02211, wherein Nayak sued his former employer, Voith Turbo, Inc. (hereinafter, "Voith"), alleging that he was subject to discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as well as numerous other state law claims, arising out of his employment with Voith.[1]  In the Voith Action, Nayak, who is proceeding *via* an amended complaint, alleges that he retained Anne E. Zerbe, Esq. ("Zerbe") of the CGA Law Firm to represent him in his employment-related disputes, including negotiating the terms of his confidential agreement and general release with Voith.  According to Nayak, however, Voith—in an effort to terminate him and minimize its liabilities to him—entered into a separate agreement with Zerbe, under which they agreed to conspire against him by drafting and negotiating the confidential agreement and general release in such a way that it would only benefit Voith.  In exchange for her participation in the conspiracy, Zerbe received a "kick back payment" from Voith.  Currently pending in that action is Voith's

---

[1] Hereinafter, the "Voith Action."

motion to dismiss Nayak's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Nayak has also sued his former counsel, the CGA Law Firm and Zerbe (the attorney who negotiated the confidential agreement and general release on his behalf), in case number 1:13-CV-2533, alleging, *via* an amended complaint, civil conspiracy, fraudulent misrepresentation, and breach of fiduciary duty arising from the defendants' representation of Nayak with respect to the same employment-related disputes described above in the Voith Action.[2]  In the CGA Action, which has since been dismissed by the United States District Court for the Middle District of Pennsylvania and affirmed by the United States Court of Appeals for the Third Circuit, Nayak generally alleged that the defendants conspired with Voith by retaliating against him and by encouraging him to consider an amicable termination rather than returning to work.  In particular, Voith proposed a settlement agreement—namely, the confidential agreement and general release— under which Nayak, in exchange for waiving his legal claims against Voith, would receive an extended paid leave of absence.  According to Nayak, however, the defendants advised him to take this agreement *or* be fired and deported to India. And, although Nayak admitted to signing the agreement, he alleged that the terms were ultimately different than what he expected.  Nayak further alleged that,

---

[2] Hereinafter, the "CGA Action."

pursuant to the terms of the agreement, Voith paid $10,000 of Nayak's legal fees directly to the defendants. And finally, Nayak alleged that he surrendered all evidence of his claims against Voith to the defendants.

While his appeal in the CGA Action was pending before the Third Circuit, Nayak commenced the instant action against the CGA Law Firm and Zerbe (collectively referred to herein as the "CGA Defendants"). This time, however, Nayak has also included Voith's counsel as defendants—namely, McNees Wallace & Nurrick LLC and its attorney, Brian F. Jackson, Esq. (collectively referred to herein as the "McNees Defendants"). Nayak's complaint, much like his complaints in the Voith and CGA Actions, reiterate the employment-related disputes that arose during the course of his employment with Voith, as well as the allegedly unlawful negotiation of the confidential agreement and general release that he admittedly signed.

### B. Factual Background.

We succinctly state the facts, as set forth in the complaint, as follows:

In late 2011 and early 2012, Nayak was considering an employment offer from Voith, which would require him to relocate from India (where he was living and working) to Pennsylvania (where Voith is located). *Doc. 1* at ¶¶ 1-5. Although Voith proposed employing Nayak for a minimum of three years, Voith refused to enter into a written employment agreement with Nayak. *Id.* at ¶¶ 6, 8.

4

Undeterred, Nayak accepted Voith's offer and began his employment on October 12, 2012.  *Id.* at ¶¶ 7, 10, 13, 21.

Within a month of beginning his employment, Nayak began experiencing discrimination and harassment from other employees at Voith, which was only followed by more harassment when he complained about such treatment to Human Resources.  *Id.* at ¶¶ 21-57.  As a result, Nayak began suffering from anxiety, depression, hypertension, and insomnia and decided to take a medical leave of absence from his employment at Voith.  *See id.* at ¶¶ 22-57, 59, 62.  Nayak also decided to retain the CGA Defendants as legal counsel to represent him in his employment-related matters.  *Id.* at ¶ 58.

Ultimately, Voith offered Nayak a settlement agreement, under which Nayak, in exchange for waiving his legal claims, would receive an extended paid leave of absence from his employment until December 31, 2013, as well as a $10,000 payment towards his legal fees.  *Id.* at ¶ 116.  Voith, who was represented by counsel, and Nayak, who was also represented by counsel, appear to have discussed and negotiated the terms of this agreement until roughly May of 2013, the month in which Nayak signed the agreement.  *See generally id.* at ¶¶ 86-157.

Although Nayak acknowledges he signed the agreement (*id.* at ¶ 157), the crux of his complaint is that he was unlawfully coerced into doing such. Specifically, Nayak alleges that his own legal counsel, defendant Zerbe, had an

agreement with Voith to conspire against him. *Id.* at ¶¶ 63-82. In support, Nayak alleges the following: that Zerbe, who had initially encouraged him to resume work, later encouraged him to voluntarily resign and enter into the agreement (*id.* at ¶¶ 66, 86); that Zerbe and Voith advised him to sign the agreement or face "likely" financial ruin by being terminated and deported to India (*id.* at ¶ 149; *see also id.* at ¶¶ 79-82, 87); that Zerbe misrepresented his demands in the negotiation of the agreement (*id.* at ¶ 90); that Zerbe, in an attempt to enforce the conspiracy with Voith, instructed Voith to appoint defendant Jackson as a mediator so that Jackson could facilitate conversations between Zerbe and Voith (*id.* at ¶¶ 93-99); that Zerbe only presented Nayak with the last page of the agreement when she asked him to sign it (*id.* at ¶ 154); that the terms of the agreement did not reflect the terms he expected—namely, that he remain employed with Voith until at least September 2015 (*id.* at ¶¶ 165-171); that Zerbe was the one who fraudulently "altered the content" of the Release (*id.* at ¶¶ 165-75, 178); that the terms in the agreement, which required Voith to pay a $10,000 payment towards Nayak's legal fees, constituted a "kick back payment" to Zerbe in exchange for her participation in the conspiracy (*id.* at ¶¶ 210, 220-26); that Zerbe did not explain Nayak's rights or the terms of the agreement before he signed it (*id.* at ¶¶ 160-61); that, given his "mental incapacity and impaired judgment," Nayak was vulnerable to Zerbe's pressure to sign the agreement (*id.* at ¶¶ 150-52); that Zerbe fraudulently "induced"

him into signing the Release (*id.* at ¶¶ 136-40, 150-52); and finally, that Zerbe mislead him regarding the process for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") (*id.* at ¶¶ 109-112).

In addition to being unlawfully coerced into signing the agreement, Nayak also alleges that he had to surrender, to the defendants, all evidence of his claims against Voith, including his official laptop and mobile phone. *Id.* at ¶¶ 153, 163-64. He alleges that the laptop and phone contain emails and text messages of the harassment and assault that he suffered during the course of his employment with Voith. *Id.* at ¶ 164.

Finally, Nayak alleges that he "reached out" to multiple law firms in Pennsylvania and Texas and that he filed a complaint with the EEOC, seeking assistance to rescind the agreement he executed with Voith. *Id.* at ¶¶ 180-183. According to Nayak, defendants Zerbe and Jackson, along with Voith, not only influenced the EEOC to terminate any investigation and to dismiss Nayak's EEOC complaint, but also to not act upon said complaint until December 31, 2013—a date passed the deadline for rescinding his agreement with Voith. *Id.* at ¶¶ 189-190, 197-198.  On January 31, 2014, the EEOC dismissed Nayak's complaint and refused to issue him a right-to-sue letter. *Id.* at ¶¶ 199, 204-05.  Undaunted by the EEOC's refusal, Nayak commenced various lawsuits in this Court, including the filing of his complaint in the Voith Action. *Id.* at ¶ 205.

Based upon these facts, Nayak raises the following state-law claims: (1) tortious interference with a contract; (2) intentional misrepresentation; (3) civil conspiracy; (4) promissory estoppel; (5) bribery; (6) contract fraud; (7) "breach of contract/legal malpractice;" (8) "third party beneficiary breach of contract claim/legal malpractice;" and (9) "transactional negligence in drafting an agreement." *Id.* at 30-38.  By way of remedy, Nayak seeks to be awarded the costs incurred for attending court proceedings in the United States; pre and post judgment interest and costs; compensatory damages in the amount of $300,000; and any further relief to which the Court finds he is entitled. *Id.* at 40.

In response, both the CGA Defendants and the McNees Defendants have moved for dismissal of Nayak's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See docs. 23*, *26*.   Their motions, which have been fully briefed, are ripe for disposition.

### III. Legal Standards.

In accordance with Rule 12(b)(6), the Court may dismiss a complaint  for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223,

229 (3d Cir. 2010).   In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).   With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The statement required

by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"   *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege sufficient facts in

11

their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).   Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.[3]

### A. The CGA Defendants' Motion to Dismiss Should be Granted.

Although the CGA Defendants move to dismiss Nayak's complaint on several grounds, the decisive basis for their motion is the doctrine of *res judicata*. *See doc. 27* at 14-17.   Specifically, the CGA Defendants argue that Nayak's present action is a mere recitation of the original action that he previously filed against them—namely, the CGA Action.   *Id.* at 16.   The CGA Defendants further argue that the present action, like the CGA Action, concerns their representation of Nayak in the negotiation of his separation and termination from Voith.   *Id.* Because Nayak is simply recasting the allegations of the CGA Action, and because

---

[3] Because the Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332, we will apply Pennsylvania substantive law.   *Morrison v. AccuWeather*, Inc., No. 4:14-CV-0209, 2015 WL 4357346, at *1 (M.D. Pa. July 14, 2015); *see, e.g*., *Erie R. Co. v. Tompkins*, 304 U.S. 64, 91–92 (1938).

such allegations do not arise from new facts or evidence, the CGA Defendants contend that the doctrine of *res judicata* bars Nayak's present action.  *Id.*

Although it is an affirmative defense, *res judicata* may be raised by the CGA Defendants in their Rule 12(b)(6) motion to dismiss.  *See Tyler v. O'Neill*, 52 F. Supp. 2d 471, 473 (E.D. Pa. 1999), *aff'd sub nom. Tyler v. O'Neil*, 225 F.3d 650 (3d Cir. 2000) ("*[R]es judicata*, although an affirmative defense, may be raised in a Rule 12(b)(6) motion." (citing *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3rd Cir. 1997))); *accord Horan v. Wetzel*, No. 1:13-CV-00140, 2015 WL 433661, at *4 (M.D. Pa. Feb. 3, 2015).  And further, because the Court retains diversity jurisdiction over the complaint, and because the causes of action therein are based on Pennsylvania law, our analysis is governed by Pennsylvania *res judicata* law.  *See Murphy v. Landsburg*, 490 F.2d 319, 322 n.4 (3d Cir. 1973) ("Because jurisdiction is based on diversity of citizenship, we apply the law of Pennsylvania with respect to a plea of *res judicata*[.]") (italics added); *see also Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191, 194 (3d Cir. 2014) (applying Pennsylvania *res judicata* law in a diversity action where the causes of action in the complaint were based on Pennsylvania law).

Under the doctrine of *res judicata*, or claim preclusion, a "final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action."  *Balent v.*

*City of Wilkes-Barre*, 669 A.2d 309, 313 (1995).  "*Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action."  *Id.*; *see also Murphy*, 490 F.2d at 322 (explaining that the scope of *res judicata* "is broad—the original judgment is conclusive not only as to matters actually raised and litigated but also as to matters that could have been raised and litigated").  "As the Supreme Court of Pennsylvania explained . . . 'the purpose of [the *res judicata*] doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications.'"  *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 550–51 (3d Cir. 2006) (quoting *Balent*, 669 A.2d at 315); *see also Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 157–58 (3d Cir. 2001) (explaining that the defense of *res judicata* "is designed to avoid piecemeal litigation" stemming from the same events). And, finally, in order "[f]or claim preclusion to apply, Pennsylvania requires that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued."  *R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 427 (3d Cir. 2011).

"Isolating the alleged wrongful act is critical to the first requirement—identity of subject matter." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).

Here, the underlying events that give rise to Nayak's claims in the present action are the same as the events that gave rise to his claims in the prior CGA Action. In both actions, Nayak alleges the following: that he was employed at Voith from October 2012 until December 2013; that he retained the CGA Defendants to represent him in his employment-related disputes of harassment, discrimination, and retaliation; that the CGA Defendants began conspiring with Voith, stopped representing his best interests, and ultimately advised him to accept Voith's offer to settle *or* be fired and deported from the United States; that defendant Jackson was brought into the mix so that he could facilitate the conspiracy between the CGA Defendants and Voith; that although he (Nayak) ultimately signed the agreement, he only reviewed the last page thereof; that the terms of that agreement were different from the terms he expected—specifically, he expected to remain employed with Voith until September 2015; that he was suffering from anxiety, depression, hypertension, and insomnia when he signed the agreement; and that after he surrendered all evidence of his claims to the defendants, he received an "inflated" invoice from the CGA Defendants for legal services totaling $17,000, which included a $10,000 "kick back payment" from Voith to Zerbe for her participation in the conspiracy. Thus, because the same events underlie both actions, the first element of the *res judicata* doctrine is satisfied.

Similarly, the second element of the doctrine—same cause of action—is also satisfied.  Although "[t]here is no bright-line test for determining when the causes of action in two suits are identical for *res judicata* purposes" (*O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1065 (3d Cir. 1991) (italics added)), the Court should consider the following factors:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Id.* (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)) (italics added).  First, we find, as set forth above, that the acts complained of in the present action are the same as those complained of in the prior action, and further, that the demand for relief is also the same in both actions.  In this action, Nayak seeks to be awarded the costs incurred for attending court proceedings in the United States; pre and post judgment interest and costs; compensatory damages in the amount of $300,000; and any other such relief the Court deems proper.  In his prior action, Nayak similarly sought to be awarded damages in the amount of $285,000 and any other such relief the Court deemed proper.  Second, considering that we are "required to pierce the technical differences between the two actions, take a broad view of the subject, and bear in mind the actual purpose to be

16

attained[,]" (*Gregory*, 843 F.2d at 117), we find that Nayak had only one cause of action for the allegedly wrongful negotiation of his separation and termination from Voith, *even if* varying theories are applicable and *even if* there are additional defendants. *See id.* ("The transaction remains unitary 'although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" (quoting Restatement (Second) of Judgments § 24 (1982))); *id.* at 119 (explaining that "[t]he essence of the cause of action asserted against the defendants . . . is not altered by the addition of more parties"); *see generally Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (declining to rely on a test that is dependent "on the specific legal theory invoked"). Third, we find that the acts complained of in both actions are indistinguishable, such that Nayak would "inevitably call the same witnesses and present exactly the same evidence in this second action." *Helmig v. Rockwell Mfg. Co.*, 131 A.2d 622, 626 (Pa. 1957), *cert. denied*, 355 U.S. 832 (1957). Fourth, we find that the material facts described in this action are the same as those described in the prior action. Therefore, the second element of the *res judicata* doctrine—same cause of action—is satisfied.

Likewise, the third and fourth elements of the *res judicata* doctrine are also satisfied here. With respect to the third element, which necessitates that the persons and parties to the action be the same, we find that Nayak and the CGA

17

Defendants were parties in the prior CGA action, just like they are parties in the present action. *See Graboff*, 559 F. App'x at 194 (finding the second element of *res judicata* satisfied where the plaintiff and the defendant were parties in both actions). With respect to the fourth element, which requires us to consider the capacity of the parties to sue or be sued, we easily find that both Nayak and the CGA Defendants can sue and be sued.

Finally, we find that, given the Third Circuit's Opinion and Entry of Judgment on August 13, 2015, affirming the District Court's dismissal of Nayak's prior action against the CGA Defendants, *and* the United States Supreme Court's denial of Nayak's Petition for Writ of Certiorari, there has been a final and valid judgment on the merits, thus precluding the present action. *See Nayak v. C.G.A. Law Firm*, 620 F. App'x 90 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1466 (2016); *see also Turner v. Crawford Square Apartments III*, 449 F.3d 542, 548 (3d Cir. 2006) (explaining, under Pennsylvania law, that "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action, . . . even if different or additional relief or grounds for relief are sought in the later case" (quoting *Balent*, 669 A.2d at 313 (1995))).

To conclude, because we are sufficiently persuaded that the matter *sub judice* is indivisible from Nayak's prior action against the CGA Defendants, we

recommend granting the CGA Defendants' motion to dismiss on the basis of *res judicata*. And further, because Nayak's claims against these defendants are incapable of being cured by amendment, we also recommend dismissing such claims with prejudice.[4]

### B. The McNees Defendants' Motion to Dismiss Should also be Granted.

Out of the nine counts in Nayak's complaint, only three apply to the McNees Defendants—specifically, (1) Count I, which asserts a tortious interference claim; (2) Count III, which asserts a civil conspiracy claim; and (3) Count VIII, which asserts a "third party beneficiary breach of contract"/"legal malpractice" claim. *Doc. 1* at 30, 32, 37. In moving for dismissal, the McNees Defendants argue that all three of these counts are barred by the "Confidential Agreement and General Release" (hereinafter, the "Release") that Nayak executed with Voith. *Doc. 25* at 18-24. Specifically, they assert that Nayak, who has expressly waived and released

---

[4] Although Nayak has filed a brief in opposition to the CGA Defendants' motion to dismiss, we note that he has only offered conclusory assertions to support his contention that the doctrine of *res judicata* should not apply to the present claims. *See, e.g.*, *doc. 42* at 4 ("With two different factual scenarios in the two different lawsuits, there is no doubt that both the cases present different issues to be decided by this [C]ourt."); *id.* ("As the factual matrix of . . . both the lawsuits are different from each other the underlying issues in both the cases are not the same). Moreover, his *pro se* status does not excuse his ignorance of the law. *Compare id.* at 3 (explaining that, in the CGA Action, he drafted his complaint "without the assistance of an attorney") *with id.* at 4 (explaining that he has since gained "experience in litigation and is now some what [sic] aware of how to present his allegations properly to the [C]ourt").

all claims against them, is now seeking to avoid enforcement of the Release by asserting various grounds for invalidation, including duress and mutual mistake. *Id.*; *see also doc. 47* at 9-10.  As maintained by the McNees Defendants, however, Nayak's assertions are legally insufficient and cannot support invalidation of the Release.  *Doc. 25* at 18-24.  Alternatively, they argue that all three counts fail state a claim upon which relief can be granted.  *See id.* at 11-18.  Because Nayak would need to invalidate the Release in order to prevail on his claims against the McNees Defendants, we address this argument first.

"'To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Nayak v. C.G.A. Law Firm*, 620 F. App'x 90, 93 n.3 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1466 (2016) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "'[A]n exception to that general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" *Nayak*, 620 F. App'x at 93 n.3 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citation omitted) (emphasis in the original).  As the United States Court of Appeals made clear in Nayak's CGA Action, the Release, "attached as an exhibit to the motion to dismiss[,] is an undisputedly authentic

document that [can be] properly considered." *See id.* (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196) (internal quotation marks omitted).

In considering the Release, we observe that it is only six pages long (*doc. 24* at 63-69); it encompasses the McNees Defendants[5] (*id.* at 64); it is signed by Nayak and Voith (*id.* at 68); and, it clearly and unambiguously provides, in pertinent part, as follows:

**4.     Employee's Release/Waiver of Claims and Covenant Not to Sue.**

**(a)     General Release and Waiver of Claims. Employee, . . . for and in consideration of promises made herein, does hereby irrevocably and KNOWINGLY, VOLUNTARILY, and unconditionally waive and release fully and forever any waiveable claim, cause of action, loss, expense, or damage, of any and every nature whatsoever against the Company and its . . . agents, . . . attorneys . . . of whatever nature arising from any occurrence or occurrences, from the beginning of time until the date on which Employee signed this [Release], including without limitation any waiveable claims arising or in any way resulting from or relating to Employee's employment with Company or the December 31, 2013 termination thereof.**

*Id.* at 64 (emphasis in original). Thus, unless Nayak can establish that the Release was executed and procured by duress, fraud, accident or mutual mistake, we find that Nayak cannot overcome the binding consequences thereof. *See Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975) ("A signed

---

[5] Whether as a "mediator" facilitating negotiations for Voith (as Nayak suggests), or as counsel for Voith (as the McNees Defendants suggest), we find that the McNees Defendants are encompassed by the Release.

release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." (citing *Kent v. Fair*, 140 A.2d 445 (Pa. 1958))).

### 1. Nayak Cannot Invalidate the Release on the Basis of Duress.

In Pennsylvania, duress has been defined as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness[.]" *Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519, 521 (Pa. 1967). Where, however, "the contracting party is free to come and go and to consult with counsel, there can be no duress in the absence of threats of actual bodily harm." *Three Rivers*, 522 F.2d at 893 (citing *Carrier v. Wm. Penn Broadcasting Co.*, 233 A.2d 519 (1967)).

Here, we find that Nayak has failed to plead a plausible claim of duress under the applicable law in Pennsylvania. In the complaint, Nayak is not alleging that he signed the Release under physical duress; instead, he is alleging that he signed the Release under economic duress. Specifically, he alleges that he had to choose between signing the Release or facing the possibility of economic loss. *See, e.g.*, *doc. 1* at ¶ 149 (alleging that he faced "likely" financial ruin if he did not sign the Release). In order to successfully plead economic duress, however, we find that "there must be more than a mere threat which might possibly result in injury [to Nayak] at some future time[.]" *McDonald v. Whitewater Challengers,*

*Inc.*, 116 A.3d 99, 114-15 (Pa. Super. Ct. 2015) (cited case omitted); *see also Tri-State Roofing Co. of Uniontown v. Simon*, 142 A.2d 333, 335 (Pa. Super. Ct. 1958) (holding that duress is "more than a mere threat" of possible economic injury in the indefinite future); *Hull v. Welex Inc.*, No. 02-7735, 2002 WL 31887043, at *2 (E.D. Pa. Dec. 30, 2002) ("[M]ere financial pressure is insufficient to invalidate a release.").

We further find that there can be no serious contention of economic duress where, as here, Nayak was free to come and go and consult with his attorney, defendant Zerbe, prior to signing the Release. *See generally doc. 1*; *see also doc. 24* at 68 (acknowledging that he had "been advised to consult with an attorney of his choosing concerning the legal significance of [the Release]" and did, in fact, "consult[ ] with [defendant Zerbe of the] CGA Law Firm"); *see Degenhardt v. Dillon Co.*, 669 A.2d 946, 952 (1996) (reaffirming "the rule of law . . . that a party who has a reasonable opportunity to consult with legal counsel before entering into a contract cannot later invalidate the contract by claiming economic duress"); *Three Rivers*, 522 F.2d at 893 ("[U]nder Pennsylvania law where the contracting party is free to come and go and to consult with counsel, there can be no duress in the absence of threats of actual bodily harm." (citing *Carrier*, 233 A.2d at 519)).

And, finally, while the Court acknowledges that facing separation and ultimate termination from employment "is inherently stressful, . . . it is not the sort

of duress or undue influence that would invalidate an otherwise valid separation agreement." *Askari v. U.S. Airways, Inc*., No. 09CV0753, 2009 WL 2524530, at *4 (W.D. Pa. Aug. 14, 2009) (citing *Carter v. William Penn Broadcasting Co*., 233 A.2d 519, 521 (Pa. 1967)).

Thus, we find, based upon applicable Pennsylvania law, that Nayak cannot seek invalidation of the Release on the basis of duress.  *See Vacation Charters, Ltd. v. Textron Fin. Corp*., No. 3:14-CV-2083, 2016 WL 354094, at *8 (M.D. Pa. Jan. 28, 2016) (concluding that plaintiff failed to state a claim for economic duress under Pennsylvania law because plaintiff, who did not allege (a) a threat of physical harm, nor (b) an inability to consult with counsel, only alleged a possibility of financial difficulties, not immediate financial ruin).[6]

---

[6] Nayak also appears to be alleging in the complaint that he executed the Release under duress because he was suffering from "mental incapacity and impaired judgment" as a result of his anxiety, depression, hypertension, and insomnia. Because, however, Nayak was represented by counsel in the negotiation and execution of the Release, and because Nayak expressed his trepidations to counsel about specific terms in the Release, (*see, e.g.*, *doc. 1* at ¶¶ 101, 102, 129, 131), and finally, because Nayak declined to sign not one, but two, earlier versions of the Release (*see, e.g*, *id.*  ¶¶ 89, 142), we find that Nayak had the mental capacity to sufficiently comprehend the nature and character of the Release.  *See Taylor v. Avi*, 415 A.2d 894, 897 (Pa. Super. Ct. 1979) (explaining that the standard to evaluate a party's competency to contract is the capability of the party to understand the nature and character of the transaction); *Noyes v. Gen. Am. Life Ins. Co*., No. 97-2902, 1998 WL 54347, at *4-5 (E.D. Pa. Jan. 16, 1998) (rejecting plaintiff's claim to invalidate a contract due to mental capacity where plaintiff negotiated some details of a settlement agreement and was able to reject earlier versions of that agreement); *see also Adams v. Adams*, 848 A.2d 991, 993 (2004) (finding that "stress and anxiety" did not establish duress in the legal sense).

Even assuming Nayak could invalidate the Release on the basis of duress, thus making the Release voidable, we nevertheless find that Nayak ratified the (purportedly) voidable Release by retaining the consideration he received thereunder—including, his $10,000 fee contribution. *See doc. 1* at ¶¶ 220-225; *see also Vacation Charters*, 2016 WL 354094, at *7 ("'Economic duress ordinarily makes a contract voidable, not void,' which is an important distinction because the voidable agreement may be ratified by the party that acted under duress."); Restatement (Second) of Contracts § 174 (1981) cmt b. ("The distinction between 'void contract' and a voidable contract has important consequences. For example, a victim of duress may be held to have ratified the contract if it is voidable, but not if it is 'void.'").

### 2. Nayak Cannot Invalidate the Release on the Basis of Mutual Mistake.

Pennsylvania follows the Restatement (Second) of Contracts when determining mutual mistake:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

*Hart v. Arnold*, 884 A.2d 316, 333 (Pa. Super. Ct. 2005) (quoting Restatement (Second) of Contracts § 152 (1981)); *see also Consolidated Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 96 (3d Cir. 1999) (putting it differently, "[m]utual mistake exists

where both parties to a contract are mistaken as to existing facts at the time of execution of the contract" (quoting *Holt v. Dep't of Public Welfare*, 678 A.2d 421, 423 (Pa. Cmwlth. Ct. 1996)).  If, however, "a mistake is unilateral and is not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake, the unilateral mistake affords no basis for rescinding or reforming the release."  *Berardi v. Drexel Univ.*, No. CIV.A. 13-7488, 2014 WL 2199423, at *4 (E.D. Pa. May 27, 2014) (citing, among another case, *Smith v. Thomas Jefferson University Hosp.*, 621 A.2d 1030, 1033 (Pa. Super. Ct. 1993)).

Here, Nayak has failed to allege any facts that are sufficient to demonstrate that both he and Voith entered into the Release based upon some mutual mistake. At best, Nayak has alleged facts that suggest his *own* mistaken understanding of the Release.  Such a unilateral mistake, however, is an insufficient basis to rescind the Release.   Indeed, contracting parties, such as Nayak and Voith, "are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains."  *Simeone v. Simeon*e, 581 A.2d 162, 165 (Pa. 1990) (citing *Standard Venetian Blind Co. v. American Empire Insurance C*o., 469 A.2d 563, 566 (Pa. 1983) (failure to read a contract does not warrant avoidance or nullification of its provisions)); (further citing *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.*, 229 A.2d 741, 742 (Pa. 1967) ("Once a

person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."). Because Nayak is legally bound to know the terms of the Release he entered into (*Montgomery v. Levy*, 177 A.2d 448, 450 (Pa. 1962)), he cannot now seek invalidation of the Release on the basis of his own misunderstanding. *See Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1383 (Pa. Super. Ct. 1990) (finding that, ordinarily, a releasor cannot "avoid the effect of a release upon the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it.").[7]

---

[7] To the extent Nayak attempts to invalidate the Release on the basis of fraud, we briefly note that Nayak is only levying such allegations against defendant Zerbe, his former attorney. *See, e.g.*, *doc. 1* at ¶¶ 136-40, 150-52 (alleging that Zerbe fraudulently "induced" him into signing the Release); ¶¶ 165-75, 178 (alleging that Zerbe fraudulently "altered the content" of the Release). This is underscored by the fact that Count VI of the complaint, "Contract Fraud," is only brought against the CGA Defendants, not the McNees Defendants. *See id.* at 35 (claiming, under Count VI of the complaint, that defendant Zerbe fraudulently "induce[d] him to sign" the Release and that she fraudulently "altered" the terms thereunder). A principal, however, "acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud." *Rothman v. Filette*, 469 A.2d 543, 545 (Pa. 1983). And, as previously discussed, Nayak's allegations against the CGA Defendants are barred by the doctrine of *res judicata*. Similarly, to the extent Nayak levies allegations of fraud against Voith, we observe that such allegations have already been asserted against Voith in the Voith Action and will be considered by the undersigned when addressing Voith's pending motion to dismiss. *See Nayak v. Voith Turbo Inc.*, 1:14-CV-01053 (*docs. 92*, *102*) (Voith's pending motion and supporting brief, which responds to Nayak's attempts to invalidate the Release on the basis of fraud).

### 3. Conclusion Regarding the Release.

To conclude, we find that Nayak has knowingly and voluntarily released the McNees Defendants from any and all claims arising out of, or resulting from, either his employment with Voith or his December 31, 2013 termination thereof. Because Nayak has not shown a plausible basis for invalidating the Release, we find that he cannot now avoid the legal consequences thereof.[8]  *See generally Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991) ("'The law demands of every man who bargains with another that he should do so only after due reflection of the possible consequences of his bargain and if he misjudges the consequences that could have been expected by a reasonably intelligent man, he cannot rely on the law to remedy his fecklessness.'" (quoting *New Charter Coal Co. v. McKee*, 191 A.2d 830, 833 (1963))).  As such, we recommend granting the McNees Defendants' motion to dismiss.  Because Nayak's complaint is incapable of being cured by amendment, we further recommend dismissing the claims against the McNees Defendants with prejudice.

---

[8] Although Nayak filed a brief in opposition to the McNees Defendants' motion to dismiss, he has wholeheartedly failed to address their arguments concerning the Release, including the argument that in order for Nayak to rescind the Release, he must tender back the consideration he received thereunder.  Given our reasoning set forth herein, we need not address this argument, especially where Nayak himself has failed to do so.

## C. Civility, Decorum, and Professionalism.

It has been brought to this Court's attention, on numerous occasions, that Nayak is using the judicial system as a contrivance to harass Voith. Considering the various concerns that have been raised, we encourage Nayak to move forward in his pending Voith Action with the civility, decorum, and professionalism that this judicial system requires. We also remind all parties involved of the cardinal purpose of Rule 11 of the Federal Rules of Civil Procedure, which is to deter abuses of the judicial process. *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Rule 11 sanctions, therefore, are not to be taken lightly.

## IV. Recommendation.

**IT IS HEREBY RECOMMENDED** that the CGA Defendants' motion (*doc. 26*) to dismiss be **GRANTED** and that the McNees Defendants' motion (*docs. 23*) to dismiss also be **GRANTED**, and further, that the claims asserted against them be **DISMISSED** with **PREJUDICE**.

**IT IS ALSO RECOMMENDED** that the CGA Defendants' pending motion (*doc. 58*) to strike Nayak's supplemental brief be **DENIED** as moot.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a

habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **13th** day of **September, 2016**.

> **_S/ Susan E. Schwab_**
> Susan E. Schwab
> United States Magistrate Judge